**UNITED STATES of America, Appellee,**

v.

**Eduardo PENA, Defendant–Appellant.**

**No. 1634, Docket 93–1890.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 10, 1994.

Decided Aug. 18, 1994.

Steven M. Statsinger, New York City (Mark B. Gombiner, Legal Aid Society, of counsel), for defendant-appellant.

Jonathon M. Gerson, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty. E.D.N.Y., Peter A. Norling, Asst. U.S. Atty., of counsel), for appellee.

Before: WINTER and LEVAL, Circuit Judges, and BURNS, District Judge.*

WINTER, Circuit Judge:

Eduardo Pena appeals from a sentence imposed by Judge Amon following a plea of guilty to postal robbery with a dangerous weapon, in violation of 18 U.S.C. § 2114 (1988). On appeal, Pena contends that the district court utilized the wrong criteria for determining his culpability for purposes of a downward adjustment for role in the offense.

On March 8, 1993, appellant Eduardo Pena and another man, Jose Diaz, walked into a post office and demanded money from a postal clerk. When the clerk failed to understand the command, Pena drew a semi-automatic handgun from his waistband. The meaning of the request now clear, the clerk handed money over to Pena and Diaz, who then fled together. Pena was later arrested and pleaded guilty.

At sentencing, Pena sought a downward adjustment in his offense level for minor participation, pursuant to § 3B1.2(b) of the Sentencing Guidelines. Pena contended that Diaz suggested the robbery and pressured Pena into participating by threatening not to

---

* The Honorable Ellen Bree Burns, United States District Judge for the District of Connecticut, sitting by designation.

repay a loan. The district court, however, declined to adjust Pena's offense level downward.

On appeal, Pena, relying upon our decision in *United States v. Garcia*, 920 F.2d 153 (2d Cir.1990) (per curiam), contends that the district court impermissibly focused exclusively on Pena's assigned task in the criminal undertaking rather than examining "the defendant's culpability in the context of the facts of the case." *Id.* at 155. As Pena reads *Garcia*, the sentencing court should not examine a defendant's culpability relative to the typical offender convicted of the same federal crime but must focus exclusively on a defendant's culpability relative to his cohorts in the jointly undertaken criminal activity.

Pena fundamentally misconstrues the nature of our holding in *Garcia*. We held only that a defendant drug courier was not entitled to the benefit of a mitigating role adjustment solely on account of his status in a criminal enterprise. We did not hold that a sentencing court could not consider a defendant's conduct—his status and assigned tasks—in assessing culpability. Indeed, the status and assigned tasks of a defendant in a criminal organization are often highly probative of culpability, although the dispositive consideration remains "culpability in the context of the facts of the case."

Moreover, nowhere in *Garcia* did we imply that the inquiry into a mitigating role adjustment must consider only culpability relative to a defendant's co-perpetrators. As we observed in *United States v. Lopez*, 937 F.2d 716 (2d Cir.1991), "the defendant's role in the offense is determined 'not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, ... but also by measuring each participant's individual acts and relative culpability against the elements of the offense of conviction....'" *Id.* at 728 (quoting *United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir.1989)); *see United States v. Caruth*, 930 F.2d 811, 815 (10th Cir.1991) ("the Guidelines permit courts not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime"). As then-Chief Judge Breyer has observed, "one who, say, points a gun at a bank teller and seizes the money is not entitled to a downward adjustment simply because someone else in the gang supervised his activities." *United States v. Rotolo*, 950 F.2d 70, 71 (1st Cir.1991) (emphasis omitted).

Pena's argument is contrary to both the plain language of the commentary to § 3B1.2 and the rationale underlying the Sentencing Guidelines. Application Note 4 to § 3B1.2—in the course of counselling against a mitigating role reduction for a defendant pleading guilty to a less serious offense than warranted by actual criminal conduct—compares the culpability of the offender being sentenced with the typical offender convicted of the same federal crime. The inference drawn from this Application Note is that the Sentencing Commission intends for culpability to be gauged relative to the elements of the offense of conviction, not simply relative to co-perpetrators. Moreover, the background commentary to § 3B1.2 expressly provides that culpability is to be measured against "the average participant." *Cf. Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("commentary in the Guidelines Manual that interprets or explains a guideline is authoritative").

Finally, Congress authorized the Sentencing Guidelines with the express purpose of reducing "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." 28 U.S.C. § 991(b)(1)(B) (1988). Permitting the culpability of co-perpetrators alone to determine the adjustment for role in the offense for all members of a criminal undertaking would defeat this congressional goal by subjecting defendants who had engaged in identical criminal conduct to different sentences.

Pena's brandishing of a weapon and demand for money is obviously not a minor role in a postal robbery for purposes of the Guidelines. The sentencing court thus utilized the proper criteria in denying Pena a mitigating role adjustment.

Affirmed.